**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **EXXONMOBIL OIL CORPORATION,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:16-cv-148** |
| ) | |
| **BLACK STONE PETROLEUM INC.,** *et* ) | |
| *al.*, ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

This diversity breach of contract action arises from a dispute concerning two contracts regarding the sale of a New Jersey service station. The two named defendants did not file an answer to the complaint or otherwise respond or appear in this action, and thus the matter was referred to the Magistrate Judge for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b). The Magistrate Judge's R&R concluded:

(i) that default judgment should be entered for plaintiff against only one of the named defendants;

(ii) that plaintiff was not the intended beneficiary of the contract between the co-defendants, and thus could not sue for breach of that contract's provisions; and

(iii) that plaintiff was entitled neither to pre-judgment interest, nor post-judgment interest.

Plaintiff filed timely objections to these recommendations, which are now ripe for disposition.

For the reasons that follow,

(i) the objection to the Magistrate Judge's conclusion that plaintiff is not an intended third party beneficiary of the co-defendants' contract is sustained;

(ii) the objection to the recommendation against the award of pre-judgment interest is overruled; and

(iii) the objection to the recommendation against the award of post-judgment interest is sustained.

1

Accordingly, the record warrants the entry of judgment against both defendants, jointly and severally, for the amount of contractually-required liquidated damages, plus post-judgment interest at the statutory rate.

## I.

Plaintiff ExxonMobil Oil Corporation ("Exxon") is a New York corporation with its principal place of business in Texas. Exxon is in the business of, *inter alia*, owning and leasing roadside service stations in the United States. Defendant Black Stone Petroleum, Inc. ("Black Stone") is both incorporated and headquartered in New Jersey, and was lessee on one of Exxon's New Jersey service station properties. Defendant FDD Realty, LLC ("FDD Realty") is a New Jersey limited liability company operating in New Jersey.

On January 27, 2012, Exxon and Black Stone executed a contract (the "Exxon Agreement") in which Black Stone exercised its right of first refusal to purchase the New Jersey station that Black Stone had previously leased from Exxon. The Exxon Agreement includes the following pertinent provisions:

- Black Stone would pay Exxon a purchase price of $1,274,831 for the service station.

- Exxon would pay $350,000 toward the cost of replacing the underground fuel storage tanks at the station.

- Black Stone would sell Exxon-branded fuel exclusively from the service station's gas pumps for a period of 15 years following the closing date of the Exxon Agreement.

- In the event Black Stone would fail to sell only Exxon-branded fuel during the 15-year period, Black Stone would be liable to Exxon for liquidated damages as calculated by a formula listed in the Exxon Agreement.

- The liquidated damages formula provides that Black Stone would pay two cents per gallon of fuel multiplied by (i) Black Stone's base volume of fuel sales,[1] and (ii) the amount of time left in the 15-year window. Specifically, the formula is: "($0.02 per gallon) x ([Black Stone]'s Base Volume) x (15 [minus] the number of years (including any partial year) since the Closing Date)." Am. Compl. Ex. 1 § 4.1.2.

- The Exxon Agreement also includes a choice of law clause, providing that the Exxon Agreement is to be "governed by and construed in accordance with the laws of the Commonwealth of Virginia." *Id.* Ex. 1 § 21.11.

- The Exxon Agreement further provides that the exclusive forum for resolving disputes arising from the Exxon Agreement is the Eastern District of Virginia, Alexandria Division or, if federal jurisdiction is unavailable, the Fairfax County, Virginia circuit court.

- Related to the choice of law provision, the Exxon Agreement also requires Exxon and Black Stone "irrevocably [to] submit . . . to the personal jurisdiction of the federal court for the Eastern District of Virginia in Alexandria, Virginia, or, if federal jurisdiction is not available, to the jurisdiction of the Fairfax County Circuit Courts," and "not [to] attempt to deny or defeat such personal jurisdiction." *Id.*

Two days before entering the Exxon Agreement, Black Stone, unbeknownst to Exxon, executed a separate agreement with FDD Realty (the "FDD Agreement") in which Black Stone contracted to convey its interest in the New Jersey service station to FDD Realty. The FDD Agreement includes the following pertinent terms:

---

[1] The Exxon Agreement also provides a formula for calculating Black Stone's base volume.

- FDD Realty would advance to Black Stone $1,274,831, which was the purchase price for the station as specified in the Exxon Agreement.

- FDD Realty would also pay an additional sum to Black Stone.

- Immediately after the closing date specified in the Exxon Agreement, Black Stone would execute a deed to transfer ownership of the service station to FDD Realty.

- Following transfer of title to the service station to FDD Realty, Black Stone would "vacate the [station] no later than the date the underground storage tank upgrade work [contemplated in the Exxon Agreement] was completed and the upgrade vendor was paid." Am. Compl. Ex. 2 at 4, § 5(g).

- FDD Realty would "assume each and every obligation and responsibility of [Black Stone] under the Exxon Sale Agreement and Supply Agreement and . . . indemnify and hold [Black Stone] harmless from and against any and all liability, damage, loss, or expenses . . . arising from or related to [FDD Realty's] breach of said agreement." *Id*. Ex. 2 at 5, § 5(o).

- New Jersey law would govern the construction and interpretation of the FDD Agreement.

- FDD Realty's attorney was authorized to "supervise and manage all work required to finalize" the Exxon Agreement. *Id.* Ex. 2 at 2.

The closing date of the Exxon Agreement was April 23, 2012. Thereafter, on July 22, 2013, Exxon made the agreed payment of $350,000 toward the cost of replacing the underground storage tanks at the service station. On October 18, 2013, shortly after the storage tanks were replaced, Black Stone rebranded the station as a "Raceway" service station and ceased selling Exxon-branded fuel, in violation of the Exxon Agreement.[2] In response, Exxon demanded that

Black Stone pay liquidated damages pursuant to the Exxon Agreement. Black Stone rejected this demand, and instead directed Exxon to collect any liquidated damages due from FDD Realty, which also rejected Exxon's demand.

On February 12, 2016, Exxon filed the instant action against Black Stone, alleging breach of the Exxon Agreement arising from Black Stone's failures (i) to sell Exxon-branded fuel, and (ii) to pay the contractually-required liquidated damages. A month later, on March 14, 2016, Exxon filed an amended complaint, adding FDD Realty as a defendant and asserting damages arising from FDD Realty's breach of the FDD Agreement. Specifically, Exxon averred that FDD Realty, by signing the FDD Agreement, assumed Black Stone's obligation to pay the contractually-required liquidated damages to Exxon in the event of a breach of the Exxon Agreement. Exxon alleged that FDD Realty's assumption of that obligation created an enforceable legal right in Exxon as an intended beneficiary of the FDD Agreement. Accordingly, because neither Black Stone nor FDD Realty paid the contractually-required liquidated damages, Exxon sought compensatory damages and liquidated damages against both defendants. Notably, however, the amended complaint did not specifically seek pre-judgment interest.

Both Black Stone and FDD Realty were properly served via their registered agents, but neither defendant filed an answer or otherwise responded, nor has either defendant entered any appearance in this action. As a result, on June 21, 2016, the Clerk of Court entered a default against both defendants, pursuant to Rule 55(a), Fed. R. Civ. P. Ten days later, Exxon moved for the entry of default judgment in the amount of $299,871 in liquidated damages,[3] plus pre- and

---

[2] Although the amended complaint alleges that Black Stone rebranded the service station, that act may well have been accomplished by FDD Realty, in light of the FDD Agreement's provision requiring Black Stone to vacate the premises after the fuel tank upgrade work had been completed. This difference is immaterial, however.

post-judgment interest. A hearing on Exxon's motion for the entry of default judgment was held on July 29, 2016. In the course of this hearing, neither defendant appeared.

On August 10, 2016, the Magistrate Judge issued the R&R at issue here, recommending (i) that Exxon's motion for the entry of default judgment and an award of $299,870.76 in liquidated damages be granted against Black Stone; (ii) that Exxon's motion for the entry of default judgment against FDD Realty be denied, on the ground that Exxon is not an intended third party beneficiary of the FDD Agreement and thus lacks standing to enforce the FDD Agreement; and (iii) that Exxon's motion for pre- and post-judgment interest be denied, because Exxon's amended complaint never explicitly sought such relief.

Two weeks later, on August 23, 2016, Exxon filed objections to the Magistrate Judge's R&R, pursuant to Rule 72(b)(2), Fed. R. Civ. P. and 28 U.S.C. § 636(b)(1)(C). Specifically, Exxon claims that the Magistrate Judge erred in determining (i) that Exxon was not an intended third party beneficiary of the FDD Agreement, (ii) that Exxon was not entitled to pre-judgment interest, and (iii) that Exxon was not entitled to post-judgment interest.

## II.

Before reaching the merits of Exxon's objections, it is important to address four threshold issues.

## A.

A *de novo* standard of review applies to "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Here, default judgment is

---

[3] According to the formula provided by the Exxon Agreement, Black Stone's "base volume" was 1,070,967 gallons. Thus, applying the liquidated damages formula, ($0.02) x (1,070,967) x (15-1), damages equal $299,870.76. Exxon, in its motion for the entry of default judgment, rounded up to $299,871.

appropriate if the well-pled allegations of the complaint establish that Exxon is entitled to relief and defendants have failed to plead or defend. Fed. R. Civ. P. 55. Importantly, a defendant in default admits the complaint's well-pled factual allegations, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

## B.

Next, it is necessary to resolve choice of law issues. Contrary to Exxon's contention, New Jersey law controls the construction and interpretation of the FDD Agreement, whereas Virginia law governs the construction and interpretation of the Exxon Agreement. This is so for the obvious reason that a federal district court sitting in diversity applies the choice of law rules of the forum state. *See, e.g.*, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623-24 (4th Cir. 1999). And Virginia's choice of law rules provide that where, as here, "a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 81 (2007); *see also Hitachi*, 166 F.3d at 624. Thus, the Exxon Agreement, which contains a choice of law provision designating Virginia, is governed by Virginia law. Similarly, the FDD Agreement, which contains a choice of law provision designating New Jersey, is governed by New Jersey law.[4]

Importantly, New Jersey law applies not only to the construction and interpretation of the FDD Agreement, but also to the question whether Exxon is an intended beneficiary of the FDD

---

[4] Virginia's choice of law rules also recognize the concept of *dépeçage*, which provides that "different issues in a single case arising out of a single set of facts may be decided according to the law of different states." *Buchanan v. Doe*, 246 Va. 67, 71 (1993).

Agreement.[5] This is a sensible result, because the issue of an intended third party beneficiary of a contract is part and parcel of the construction and interpretation of that contract.

## C.

Relatedly, choice of law questions arise regarding Exxon's claims for interest on the award of liquidated damages. With respect to an award of pre-judgment interest, the settled rule in this circuit is that the forum state's law governs. *Hitachi*, 166 F.3d at 633 ("Virginia law governs the award of prejudgment interest in a diversity case."). It is equally settled that federal law, not state law, governs the issue of post-judgment interest. *See Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989) (holding that post-judgment interest in diversity cases is calculated according to federal law, not state law).

## D.

Finally, although there is no doubt that subject matter jurisdiction exists over this action,[6] the question of personal jurisdiction over FDD Realty requires some elaboration.[7]

The question whether personal jurisdiction exists over FDD Realty is answered by the fact that FDD Realty voluntarily assumed Black Stone's obligation in the Exxon Agreement to submit to the personal jurisdiction of the Eastern District of Virginia, Alexandria Division.  In this regard, the Supreme Court has observed that "parties to a contract may agree in advance to

---

[5] *See, e.g.*, *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 890 (7th Cir. 2004) (applying choice of law clause in a contract to intended beneficiary claim); *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1356 (6th Cir. 1991) (same); *Canal Ins. Co. v. Lebanon Ins. Agency, Inc.*, 504 F. Supp. 2d 113, 119 (W.D. Va. 2007) (same).

[6] In this regard, there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

[7] The Magistrate Judge correctly concluded that personal jurisdiction exists over Black Stone, but did not address the issue of personal jurisdiction over FDD Realty. The Magistrate Judge instead recommended that Exxon's claims against FDD Realty be dismissed on the ground that Exxon was not an intended third party beneficiary of the FDD Agreement.

submit to the [personal] jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). Because "the personal jurisdiction requirement is a waivable right," the enforcement of a forum-selection clause is proper if such a provision was "freely negotiated" and not "unreasonable and unjust." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Accordingly, several circuits have held that a valid forum selection clause, alone, is sufficient to confer personal jurisdiction.[8]

Indeed, the operative forum selection clause in this case is enforceable pursuant to both Virginia and New Jersey law.[9] In Virginia and New Jersey, forum selection clauses are enforced

---

[8]  *See, e.g.*, *Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 726 (8th Cir. 2001) ("Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause."); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction."); *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1407 (9th Cir. 1994) (adopting the Seventh Circuit's holding in *Heller* that "a forum selection clause alone could confer personal jurisdiction.").

[9] The Fourth Circuit instructs that the validity of a forum selection clause in diversity cases is governed by the law of the state identified in a contract's choice-of-law provision. *See Nutter v. New Rents, Inc.*, 945 F.2d 398, 1991 WL 193490 (4th Cir. 1991) (unpublished table decision) (applying law of state designated in choice of law provision to determine enforceability of forum selection clause); *Eisaman v. Cinema Grill Sys., Inc.*, 87 F. Supp. 2d 446, 448 (D. Md. 1999) (same); *Resort Funding, LLC v. Holt*, No. 3:13-cv-00476-JAG, 2013 WL 6147091, at *2 (E.D. Va. Nov. 21, 2013) (same). The choice of law question is particularly complex with respect to the forum selection clause in the instant case, because there are two contracts. On one hand, the forum selection clause originated in the Exxon Agreement, a contract governed by Virginia law, and thus the clause's construction and interpretation is typically governed by Virginia law. On the other hand, it appears that the FDD Agreement—a contract governed by New Jersey law— incorporated by reference the Exxon Agreement's forum selection clause, such that the forum selection clause became a part of the FDD Agreement and thus should be construed pursuant to New Jersey Law. *See Alpert, Golberg, Butler, Norton & Weiss, P.C. v. Quinn*, 410 N.J. Super 510, 533 (App. Div. 2009) (noting that the principle of incorporation by reference provides that two writings are to be construed as a single contract). But this Gordian Knot need not be disentangled here, as both Virginia and New Jersey law apply the same analysis to the validity of forum selection clauses.

absent a showing of fraud, unequal bargaining power, unreasonableness, or a violation of strong public policy.[10] Here, there is no indication of fraud, unequal bargaining power, unreasonableness, or a violation of strong public policy. Rather, FDD Realty voluntarily assumed the obligation to submit to the jurisdiction of courts in Virginia; indeed, the FDD Agreement even provided that FDD Realty's attorney would "supervise and manage all work required to finalize" the Exxon Agreement, which included the forum selection clause. Compl. Ex. 2 at 2. For these same reasons, the forum selection clause comports with the Supreme Court's requirement that such clauses be freely negotiated and not unreasonable or unjust. *Cf. Burger King*, 471 U.S. at 472 n.14. Accordingly, the forum selection clause is valid and confers personal jurisdiction over FDD Realty.

In summary, (i) a *de novo* standard of review applies to Exxon's objections to the Magistrate Judge's R&R; (ii) Virginia law governs the construction and interpretation of the Exxon Agreement, whereas New Jersey law governs the construction and interpretation of the FDD Agreement, including the issue of an intended third party beneficiary; (iii) Virginia law governs the award of pre-judgment interest, whereas federal law governs the issue of post-judgment interest; and (iv) there is personal jurisdiction over each party and subject matter jurisdiction in this case.

---

[10] *See Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002) ("[A]bsent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced."); *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342 (1990) ("[C]ontractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power."); *Paradise Enters. Ltd. v. Sapir*, 356 N.J. Super. 96, 103 (App. Div. 2002) ("As a general rule, a forum selection clause is enforceable unless it is the result of fraud, undue influence, or overweening bargaining power, is unreasonable, or violates a strong public policy." (internal quotation marks omitted)).

Given the resolution of these threshold issues, analysis now proceeds to the merits of Exxon's objections.

## III.

Exxon challenges three conclusions in the R&R: (i) that Exxon lacked contractual standing to sue FDD Realty for breach of the FDD Agreement because Exxon is not an intended third party beneficiary of the FDD Agreement; (ii) that Exxon was not entitled to pre-judgment interest on the liquidated damages award, and (iii) that Exxon was not entitled to post-judgment interest. Each objection is separately addressed.

## A.

The Magistrate Judge concluded that Exxon is not an intended beneficiary of the FDD Agreement because Exxon failed to show that the co-defendants "clearly and definitely intended" the FDD Agreement to confer a benefit upon Exxon, as required by Virginia law. *See Collins v. First Union Nat'l Bank*, 272 Va. 744, 751 (2006). In this regard, the Magistrate Judge reasoned that the FDD Agreement conferred no benefit on Exxon, but instead *harmed* Exxon by inducing Black Stone to breach the Exxon Agreement. Exxon contests this conclusion, contending that the FDD Agreement was intended to benefit Exxon because FDD Realty assumed Black Stone's obligation to pay liquidated damages to Exxon in the event of a breach of the Exxon Agreement. In other words, Exxon argues that even though the FDD Agreement anticipated a breach of the Exxon Agreement, FDD Realty agreed to incur liability to Exxon for liquidated damages.[11] Thus, Exxon asserts that Black Stone and FDD Realty intended to confer a

---

[11] Oddly, despite alleging such facts in the amended complaint and raising these arguments in the objections to the Magistrate Judge's R&R, Exxon's amended complaint never raised a claim of, *inter alia*, tortious interference with contract rights.

benefit on Exxon by contracting to provide a remedy to Exxon for breach of the Exxon Agreement.

Whether Exxon is an intended beneficiary of the FDD Agreement—and hence has contractual standing to sue FDD Realty for breach of that agreement—is governed not by Virginia law, as the Magistrate Judge and Exxon contend, but by New Jersey law. *See supra* Part II.B.[12] In this respect, Exxon bears the burden to show that it is an intended beneficiary of the FDD Agreement. *Roehers v. Lees*, 178 N.J. Super. 399, 405 (App. Div. 1981). It is insufficient that "the benefit so derived arises merely as an unintended incident of the agreement." *Broadway Maint. Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 259 (1982). Rather, "[t]he contractual intent to recognize a right to performance in the third person is key." *Id.*; *see also Ross v. Lowitz*, 222 N.J. 494, 513 (2015). The clearest cases are those where the parties "expressly provide" or "expressly negate any legally enforceable right in a third party." *Broadway*, 90 N.J. at 260. Where the contract is silent on the parties' intent, however, "it is necessary to examine the pertinent provisions in the agreement and the surrounding circumstances to ascertain that intent." *Id.* at 260.

To begin with, it appears that the FDD Agreement expressly provides Exxon a legally enforceable right. This is so because FDD Realty contracted with Black Stone to provide Exxon a remedy in the event of a breach of the Exxon Agreement. Indeed, FDD Realty knew that Black Stone would break the Exxon Agreement, and FDD Realty nonetheless agreed to pay Exxon the liquidated damages required by the Exxon Agreement.

---

[12] New Jersey law does indeed permit an intended beneficiary to sue on a contract. *See* N.J.S. 2A:15-2 ("A person for whose benefit a contract is made . . . may sue thereon in any court . . . although the consideration of the contract did not move from him.").

Even assuming, *arguendo*, that the FDD Agreement is silent on defendants' intent and does not "expressly provide" Exxon a legally enforceable right, the FDD Agreement's provisions reflect that Exxon is an intended third party beneficiary. In this regard, New Jersey courts have identified several factors in discerning an intention to confer a legally enforceable right on a third party, and each factor weighs heavily in Exxon's favor.

First, the FDD Agreement repeatedly named and referenced both Exxon and the Exxon Agreement, which indicates an intent to confer a benefit on Exxon. *See* Am. Compl. Ex. 2; *Ross*, 222 N.J. at 513 (naming a third party in a contract is evidence of an intent that the "third party should receive a benefit which might be enforced in the courts") (quoting *Borough of Brooklawn v. Brooklawn Housing Corp.*, 124 N.J.L. 73, 77 (N.J. 1940)). Second, FDD Realty's promise to pay liquidated damages to Exxon in the event of a breach of the Exxon Agreement is further evidence that Exxon is an intended beneficiary of the FDD Agreement. *See Broadway*, 90 N.J. at 262 (holding in the construction context that "[t]he promise to pay the damages of a fellow prime contractor is strong evidence that the injured prime contractor is an intended beneficiary who may enforce that promise").

Next, the Restatement (Second) of Contracts, which has been endorsed by New Jersey courts, also weighs in Exxon's favor. *See* Restatement (Second) of Contracts, §§ 302, 328; *Broadway*, 90 N.J. at 259-60 (endorsing the Restatement); *Werrmann v. Aratusa, Ltd.*, 266 N.J. Super. 471, 476 (App. Div. 1993) (same). In this regard, § 302(1) of the Restatement provides that a party is an intended beneficiary if: (i) "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties," and (ii) "the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." Restatement (Second) of Contracts § 302(1). Regarding the first prong, recognition of Exxon's

right to enforce the FDD Agreement effectuates the co-defendants' intention that FDD Realty would assume the obligation to pay liquidated damages to Exxon. As for the second requirement, performance of FDD Realty's promise to assume Black Stone's obligation to pay liquidated damages would satisfy Black Stone's obligation to pay money (the liquidated damages) to Exxon (the beneficiary).

Further support for Exxon's position is provided by § 328 of the Restatement, which discusses assignments and delegations of contractual rights and duties.[13] The FDD Agreement includes a classic delegation of Black Stone's duties under the Exxon Agreement to FDD Realty, which, according to the Restatement, means that Exxon became an intended beneficiary of FDD Realty's promise to perform Black Stone's duties. *See* Restatement (Second) of Contracts § 328.

Finally, although the Exxon Agreement is not, strictly speaking, subject to Article II of the Uniform Commercial Code ("UCC"), New Jersey's version of Article II of the UCC provides pertinent provisions.[14] *See, e.g.*, *Old Stone Bank v. Tycon I Bldg. L.P.*, 946 F.2d 271, 273 (4th

---

[13] Specifically, § 328 provides that

> (1) Unless the language or the circumstances indicate the contrary, as in an assignment for security, an assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of the assignor's rights and a delegation of his unperformed duties under the contract.

> (2) Unless the language or the circumstances indicate the contrary, the acceptance by an assignee of such an assignment operates as a promise to the assignor to perform the assignor's unperformed duties, and the obligor of the assigned rights is an intended beneficiary of the promise.

Restatement (Second) of Contracts § 328. The first **Illustration** to § 328 is also helpful: "A, an oil company, has a contract to sell and deliver oil to B. A delivers to C, another oil company, a writing assigning to C 'the contract' or 'all A's rights and duties under the contract.' C is under a duty to B to deliver the oil called for by the contract, and A is surety for C." Restatement (Second) of Contracts § 328 illus. 1.

Cir. 1991) (relying on Article III of the UCC as persuasive authority in a case involving real property). Specifically, Article II of the UCC provides:

> An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor *or the other party to the original contract*.

N.J.S. 12A:2-210(4) (emphasis added). Here, there is no question that Exxon was the "other party to the original contract"—i.e., the Exxon Agreement. Thus, the UCC further supports the conclusion that Exxon has a right to enforce the FDD Agreement's provision requiring FDD Realty to pay liquidated damages to Exxon.

In sum, the authorities surveyed above establish that Exxon is an intended beneficiary of the FDD Agreement. Thus, Exxon's objection must be sustained because Exxon, as an intended beneficiary, has contractual standing to sue for breach of the FDD Agreement.

**B.**

Exxon's second objection to the R&R challenges the Magistrate Judge's conclusion that Exxon is not entitled to pre-judgment interest on the liquidated damages award. As stated above, Virginia substantive law applies to the question whether an award of pre-judgment interest is appropriate. *See supra* Part II.C. Importantly, however, Rule 54(c), Fed. R. Civ. P., provides the applicable pleading standard that must be satisfied to recover pre-judgment interest in the context of a default judgment.[15] Specifically, Rule 54(c) provides that "[a] default judgment must not

---

[14] Article II of the UCC governs the sale of goods, whereas the Exxon Agreement appears to be primarily for the sale of real property. *See* N.J.S. 12A:2-102 ("[T]his Chapter applies to transaction in goods[.]").

differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In this respect, it is dispositive that Exxon's amended complaint does not specifically seek pre-judgment interest. As a result, the Magistrate Judge correctly concluded that Exxon is not entitled to pre-judgment interest.

In the context of default judgments, Rule 54(c), Fed. R. Civ. P., requires that a defendant be provided sufficient notice in the complaint of the potential award against him, as such notice enables the defendant to decide whether to respond to the complaint in the first instance. In this regard, limiting damages in a default judgment award to what is "specified in the [complaint's] 'demand for judgment' . . . ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). Leading treatises are consonant with this view. *See* 10 Alan Wright, Arthur R. Miller *et al.*, *Federal Practice and Procedure*, § 2663 (3d ed. 2016);[16] 10-54 *Moore's Federal Practice – Civil*, § 54.71 (Matthew Bender ed., 3d ed.).[17]

---

[15] *See, e.g.*, *Consol. Cigar Co. v. Tex. Commerce Bank*, 749 F.2d 1169, 1174 (5th Cir. 1985) ("Federal courts have recognized that while the substantive questions of entitlement to [pre-judgment] interest and the rates of interest are to be resolved by the applicable state law, the adequacy of a plaintiff's pleadings must be resolved by reference to Fed.R.Civ.P. 54(c) and cases construing it." (collecting cases)).

[16] Specifically, Wright & Miller observe that

> [t]he theory of [Fed. R. Civ. P. 54(c)] is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 Alan Wright, Arthur R. Miller *et al.*, *Federal Practice and Procedure*, § 2663 (3d ed. 2016).

Exxon's objection to this conclusion is twofold. First, Exxon argues that its request for pre-judgment interest does not flout Rule 54(c) because plaintiff's amended complaint sought compensatory damages, which do not "differ in kind" from pre-judgment interest. Exxon avers that compensatory damages—which are designed to make the injured party whole—necessarily include pre-judgment interest. Exxon also urges that defendants had ample notice and opportunities to be heard on Exxon's motion for default judgment, and thus an award of pre-judgment interest would not violate Rule 54(c). Second, Exxon contends that its request for pre-judgment interest does not exceed the amount sought in the amended complaint, because specifying an amount for pre-judgment interest would have been impossible before judgment was entered.

Exxon's arguments are unpersuasive. To begin with, the amended complaint's demand for compensatory damages, without specifically requesting pre-judgment interest, does not provide adequate notice to Black Stone or FDD Realty, as an award for compensatory damages will not necessarily include pre-judgment interest. Indeed, pursuant to Virginia law, the decision to provide for pre-judgment interest is discretionary. Va. Code § 8.01–382 (trial courts "*may* provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." (emphasis added)).[18] Thus, because an award for pre-

---

[17] "[D]efault is tantamount to consent to the entry of judgment, but this consent is effective only to the extent that it was duly informed. If greater relief had been demanded, the defendant might have entered the action and defended on the merits, both as to liability and the requested relief." 10-54 *Moore's Federal Practice – Civil*, § 54.71 (Matthew Bender ed., 3d ed.).

[18] *See also Hannon Armstrong & Co. v. Sumitomo Trust & Banking Co.*, 973 F.2d 359, 369 (4th Cir. 1992) ("Whether interest should be awarded pursuant to [Va. Code] section 8.01–382, and if so, from what date, are matters within the sound discretion of the district court."). Exxon seems to promote a contrary rule, that an award of pre-judgment interest is necessary when a plaintiff seeks compensatory damages. In this regard, Exxon quotes *dicta* from *Marks v. Sanzo*, 231 Va.

judgment interest is discretionary, it follows that notice of a complaint's demand for compensatory damages is not adequate notice that pre-judgment interest will be sought.

In this regard, the Supreme Court of Virginia's opinion in *Devine v. Buki*, 289 Va. 162 (2015), although not binding,[19] is especially instructive. The court in *Devine* held that it was reversible error to award pre-judgment interest to a plaintiff whose complaint "contains no request for pre-judgment interest." 289 Va. at 179. The *Devine* court reached this conclusion even though the complaint at issue explicitly sought compensatory damages. *Id.* at 169. In reaching this result, the Supreme Court of Virginia noted, as is true pursuant to Rule 54(c), Fed. R. Civ. P., that it is improper to award pre-judgment interest absent such a request in the complaint because "a plaintiff cannot recover more than he sues for." *Devine*, 289 Va. at 179; *cf.* Fed. R. Civ. P. 54(c) ("A default judgment must not . . . exceed in amount[] what is demanded in the pleadings."). In other words, the Supreme Court of Virginia has recognized that an award of pre-judgment interest, even if part of the actual damages suffered by a plaintiff, is an amount that exceeds a mere demand for compensatory damages. *See* 289 Va. at 179.

Similarly, the Second Circuit in *Silge* held that, pursuant to Rule 54(c) Fed. R. Civ. P., a plaintiff is not entitled to pre-judgment interest as part of a default judgment if the complaint does not specifically plead pre-judgment interest in the demand for judgment. 510 F.3d at 160 (citing Fed. R. Civ. P. 54(c)). This is so, the Second Circuit concluded, even where the complaint

---

350 (1986), a case where the Supreme Court of Virginia observed that "[t]he award of prejudgment interest . . . is considered *necessary* to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his obligated duty." 231 Va. at 356 (emphasis added). But the *holding* in *Marks* lends no support to Exxon; the *Marks* court explicitly held that pre-judgment interest is a matter "within the sound discretion" of the lower court. *Id.* (citing Va. Code § 8.01-382).

[19] As stated above, the Federal Rules of Civil Procedure, not state law, provide the applicable pleading standards in the context of a diversity case involving a claim for pre-judgment interest. *See supra* note 15 and accompanying text.

demanded judgment for a specified amount "plus costs and disbursement" or included the boilerplate demand for "such other and further relief as the court may deem proper." *Id.*[20] Importantly, neither of the defaulting defendants received notice of Exxon's specific request for pre-judgment interest until *after* default was entered. Thus, as the Second Circuit put it, "[t]he notice may therefore have seemed to come too late in the day for defendants to undo the consequences of their prior decision to default, greatly limiting [the notice's] practical value." 510 F.3d at 161. Indeed, as Virginia decisional law makes clear, to seek pre-judgment interest without pleading it in the complaint is to ask for "more than [on]e sue[d] for." *Devine*, 289 Va. at 179.

In sum, Exxon's objection with respect to pre-judgment interest must be overruled, because Exxon's request for pre-judgment interest seeks an award different in kind or exceeding in amount from that demanded in the complaint.[21] *See* Fed. R. Civ. P. 54(c).

---

[20] Several other federal courts have reached the same conclusion as that reached by the Supreme Court of Virginia and the Second Circuit Court of Appeals. *See, e.g.*, *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 923 (C.D. Cal. 2010); *Doug's Coin & Jewelry, Inc. v. Am.'s Value Channel, Inc.*, No. 2:12-cv-01095, 2015 WL 3632228, at *10 n.4 (N.D. Ala. June 10, 2015). Indeed, Exxon has not pointed to any cases in which a court construing Rule 54(c), Fed. R. Civ. P., awarded pre-judgment interest as part of a default judgment where the plaintiff's complaint had failed specifically to seek such interest; indeed, thorough research has revealed no such case. Thus, the reasoning elucidated by the Second Circuit in *Silge* and the Supreme Court of Virginia in *Devine* is particularly persuasive here.

[21] To avoid this result, Exxon attempts to distinguish this case from the Second Circuit's decision in *Silge*. To be sure, Exxon is correct to argue that the amended complaint specifically sought "compensatory damages," and thus need not rely on the boilerplate language—"and such other relief"—that the *Silge* court found to provide insufficient notice. *See Silge*, 510 F.3d at 160. But, in trying to distance itself from the plaintiff in *Silge*, Exxon has simply rehashed the other arguments that also failed to persuade the Second Circuit. Specifically, Exxon asserts that (i) defendants were given meaningful notice of Exxon's demand for pre-judgment interest because the amended complaint sought "compensatory damages," which by implication includes pre-judgment interest; and (ii) defendants had notice of Exxon's default judgment motion (which did demand pre-judgment interest) and thus had an opportunity to respond in writing or by attending a hearing. These arguments echo those ultimately rejected by the *Silge* court. Indeed, the plaintiff

## C.

Exxon's final objection is to the Magistrate Judge's recommendation against the award of post-judgment interest. This objection must be sustained; the post-judgment interest analysis differs significantly from that applicable to pre-judgment interest. First, as stated above, federal law, not state law, governs the calculation of post-judgment interest in a diversity case. *See supra* Part II.C. Second, post-judgment interest on a damages award is mandatory under federal law. *See* 28 U.S.C. § 1961 ("Interest *shall* be allowed on any money judgment in a civil case recovered in a district court." (emphasis added)). As the Fourth Circuit has stated in applying this statute, "[i]n contrast to the district court's discretion in the awarding of pre-judgment interest, federal law mandates the awarding of post judgment interest." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (citing 28 U.S.C. § 1961)). Accordingly, Exxon's failure to seek post-judgment interest in the amended complaint is of no moment, and Exxon's objection to the Magistrate Judge's recommendation against the award of post-judgment interest must be sustained. Post-judgment interest is required at the statutory rate.

## IV.

In sum, for the reasons stated, (i) Exxon is an intended third party beneficiary of the FDD Agreement and has contractual standing to sue FDD Realty for breach of the FDD Agreement, (ii) Exxon is not entitled to pre-judgment interest; and (iii) Exxon is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961. Accordingly, judgment is properly entered against Black

---

in *Silge* unsuccessfully argued that (i) proper notice was provided because the complaint stated a precise sum sought and explicitly stated that the plaintiff would seek "interest," which by implication included pre-judgment interest, and (ii) the plaintiff's submissions for an inquest gave defendants notice and opportunity to respond to plaintiff's request for pre-judgment interest, even if those amounts were not in the complaint. *See* Brief for Plaintiff-Appellant at 10-14, *Silge v. Merz*, 510 F.3d 157 (2d Cir. 2007) (No. 06-0629-cv), 2006 WL 6048854. At bottom, Exxon has offered a variation on a theme that is as unmoving here as it was before the Second Circuit.

Stone and FDD Realty, jointly and severally, for the amount of the contractually-required liquidated damages—$299,870.76—plus post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

An appropriate Order will issue.

Alexandria, Virginia
November 9, 2016

/s/

T. S. Ellis, III
United States District Judge